# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAIME BENAVENTE, Jr.,<br><br>          Petitioner,<br><br>     v.<br><br>ANTHONY HEDGPETH,<br><br>          Respondent. | 1:08-CV-00085 JMD (HC)<br><br>ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS AS TO GROUND ONE AND DENYING PETITION FOR WRIT OF HABEAS CORPUS AS TO GROUNDS TWO AND THREE<br><br>ORDER REMANDING CASE TO SUPERIOR COURT FOR RE-SENTENCING SIXTY (60) DAY DEADLINE<br><br>ORDER GRANTING CERTIFICATE OF APPEALABILITY AS TO GROUND ONE AND DENYING CERTIFICATE OF APPEALABILITY AS TO GROUNDS TWO AND THREE |

Jaime Benavente, Jr., Petitioner, is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

Both parties consented, pursuant to Title 18 U.S.C. § 636(c)(1), to have a magistrate judge conduct all further proceedings, including entry of final judgment. (See Docs. #9, 18.) The case was reassigned to the undersigned on May 19, 2010. (Doc. #46.)

**PROCEDURAL BACKGROUND**

A jury in Tulare County found Petitioner guilty of one count of carjacking (Cal. Pen. Code § 215(a)) (hereinafter Count One) with a gang enhancement (Cal. Pen Code § 186.22(b)(1)) and guilty of one count of resisting, delaying, or obstructing a peace officer (Cal. Pen. Code § 148(a)(1))

1  (hereinafter Count Two) also with a gang enhancement (Cal. Pen. Code. § 1866.2(d)). (Lodged Doc.
2  4, 2.) The trial court sentenced Petitioner on the first count to a prison term of 15 years to life and on
3  the second count to a two-year term to run concurrently. Id.

4       Petitioner appealed to the California Court of Appeal, Fifth Appellate District, who affirmed
5  the judgment of the trial court on September 20, 2006. See id.

6       Petitioner petitioned for review to the California Supreme Court, which summarily denied
7  review on December 20, 2006. (Lodged Doc. 6.)

8       Petitioner filed the instant petition in the Eastern District of California on December 20,
9  2007. (Doc. #1.)

10      Respondent filed an answer to the petition on June 10, 2008 (Doc. #17), to which Petitioner
11 filed a traverse on September 28, 2009 (Doc. #40).

**FACTUAL BACKGROUND**[1]

On September 6, 2004, a group of people socialized at a home in Tulare County. Jose C., one of the people present, had parked his father's car in front of the home. With the keys in the ignition, Jose prepared to leave with two others. while locating the other two, Jose noticed a white vehicle drive past the home. The vehicle stopped. Four of five men got out of the vehicle, yelling gang slogans and flashing gang signs, both associated with "BPC," a clique of the Northern (Nortenos) criminal street gang in Tulare County.

In response, the people at the home retreated toward the door. Witnesses identified [Petitioner] and his codefendant, Rudy E., as two of those aggressors approaching them. [Petitioner] and Rudy E. are each members of BPC. Rudy attempted to strike Jose, but missed and hit Jose's friend. Another person at the scene, Victor M., saw one of the aggressors take a rifle case out of the white vehicle and place it in Jose's father's car. After learning the police had been called, the aggressors vacated the premises and left in the white vehicle and Jose's father's car.

Tulare County sheriff deputies obtained a warrant to arrest [Petitioner] in connection with the carjacking of Jose's father's car. On September 7, 2004, a deputy knocked on the door of [Petitioner]'s girlfriend's home and announced his presence. Immediately, he heard movement inside the home. Another deputy by the side door saw [Petitioner] and Rudy E. emerged and ran away from the home in their gang colors. The deputy identified himself and ordered them to stop, but they did not. The deputies found the two hiding underneath a car in an open garage. When the deputies ordered them to emerge, [Petitioner] and Rudy surrendered without further incident.

A police expert testified at trial about Nortenos and a specific clique called BPC. The expert also testified about the gang's turf, colors, numbers, hand signs, and criteria to determine gang status. [Petitioner] met seven of the 10 possible criteria, though he only needed four to be considered a member. The expert also discussed the

---

[1] The facts are derived from the factual summary set forth by the California Court of Appeal, Fifth Appellate District, in its opinion of September 20, 2006, and are presumed correct pursuant to 28 U.S.C. §§ 2254(d)(2), (e)(1). (See Lodged Doc. 4, 2-3.)

gang's primary activities: harassing people; carrying guns; and committing burglaries, assaults, and homicides. When asked if [Petitioner]'s evasion of the police benefitted, promoted, or furthered the gang, the expert answered, "It showed they'll be defiant towards law enforcement. They have no respect for law enforcement. And also, it's going to show to their gang that they have no fear for law enforcement, and it's going to bump them up higher in their chain of command pretty much." On cross-examination, when asked how running from the deputies benefitted the gang, the expert testified that "[Petitioner is] showing. . . . his other gang members that he's not afraid of the cops. He's going to run, hide, do what he has to do to get away." However, when asked if any crime committed benefits a street gang, the expert responded in the affirmative because "he's showing the fellow members of the gang that he's not afraid of the cops. He's going to do what he wants." In addition, the expert stated that self-preservation has no bearing in his opinion, although it could be an additional motive for the gang member's actions.

## DISCUSSION

### I. Jurisdiction

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375 n.7 (2000). Petitioner asserts that he suffered violations of his rights as guaranteed by the U.S. Constitution. The deprivation in question arose out of the Tulare County Superior Court, (Lodged Doc. 4, 2), thus, the Court has jurisdiction over the action and venue is appropriate.

### II. Legal Standard of Review

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997), (quoting Drinkard v. Johnson, 97 F.3d 751, 769 (5th Cir. 1996), overruled on other grounds by Lindh v. Murphy, 521 U.S. 320 (1997)) (holding AEDPA only applicable to cases filed after statute's enactment); See also Bobby v. Van Hook, __ U.S. __, 130 S.Ct. 13, 16 (2009); Pinholster v. Ayers, 509 F.3d 651, 662 (9th Cir. 2009).

This Court may entertain a petition for writ of habeas corpus on "behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

The instant petition is reviewed under the provisions of AEDPA. Lockyer v. Andrade, 538

U.S. 63, 70 (2003). Under the AEDPA, an application for habeas corpus will not be granted unless the adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding." 28 U.S.C. § 2254(d); see Lockyer, 538 U.S. at 70-71; see Williams, 529 U.S. at 413 (contrary to or an unreasonable application of clearly established federal law); Wood v. Allen, __ U.S. __, 130 S.Ct. 841, 849 (2010) (unreasonable determination of fact).

As a threshold matter, this Court must "first decide what constitutes 'clearly established Federal law, as determined by the Supreme Court of the United States.'" Lockyer, 538 U.S. 63, 71 (2003) (quoting 28 U.S.C. § 2254(d)(1)). In ascertaining what is "clearly established Federal law," this Court must look to the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." Id. (quoting Williams, 592 U.S. at 412. "In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." Id.

Finally, this Court must consider whether the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law." Lockyer, 538 U.S. at 72, (quoting 28 U.S.C. § 2254(d)(1)). "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." Williams, 529 U.S. at 413; see also Lockyer, 538 U.S. at 72. "Under the 'reasonable application clause,' a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413.

The, the initial step in applying AEDPA's standards is to "identify the state court decision that is appropriate for our review." Barker v. Fleming, 423 F.3d 1085, 1091 (9th Cir. 2005). Where more than one State court has adjudicated Petitioner's claims, a federal habeas court analyzes the last reasoned decision. Id. (citing Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991) for the presumption

that later unexplained orders, upholding a judgment or rejecting the same claim, rests upon the same ground as the prior order). The Ninth Circuit has further stated that where it is undisputed that federal review is not barred by a state procedural ruling, "the question of which state court decision last 'explained' the reasons for judgement is therefore relevant only for purposes of determining whether the state court decision was 'contrary to' or an 'unreasonable application of' clearly established federal law." Bailey v. Rae, 339 F.3d 1107, 1112-1113 (9th Cir. 2003). Thus, a federal habeas court looks through ambiguous or unexplained State court decisions to the last reasoned decision in order to determine whether that decision was contrary to or an unreasonable application of clearly established federal law. Id.

Here, the Tulare County Superior Court, the California Court of Appeal, and the California Supreme Court all adjudicated Petitioner's claims. As the California Supreme Court issued a summary denial of Petitioner's claims, the Court "look[s] through" those courts' decisions to the last reasoned decision; namely, that of the California Court of Appeal, Fifth Appellate District. See Ylst v. Nunnemaker, 501 U.S. at 804.

**III. Review of Petitioner's Claims**

The petition for writ of habeas corpus contains three grounds for relief, contending that Petitioner's constitutional rights were violated by: (1) insufficient evidence supporting the jury's finding regarding the gang enhancement as to Count Two; (2) ineffective assistance of trial counsel; and (3) the sentence imposed on Petitioner constitutes cruel and unusual punishment.

Ground One

Petitioner claims that there was insufficient evidence to support the jury's finding that he evaded the police for the benefit of, at the direction of, or in association with any criminal street gang. (See Pet., 11-24.)

*Foundation*

Petitioner argues that the gang expert did not lay the proper foundation as to how Petitioner's running from law enforcement benefitted the gang and therefore evidence given by the gang expert was inadmissable. (Pet., 21.) "Federal habeas courts do not review questions of state evidentiary law. (citation omitted) Our habeas powers do not allow us to vacate conviction 'based on belief that

the trial judge incorrectly interpreted the California Evidence Code in ruling' on the admissibility of evidence." Briceno v. Scribner, 555 F.3d 1069, 1077 (9th Cir. 2009) (quoting Estelle v. McGuire, 502 U.S. 62, 72 (1991)). Evidence erroneously admitted in state court "warrants habeas relief only when it results in the denial of a fundamentally fair trial in violation of the right to due process." Briceno, 555 F.3d at 1077 (quoting Estelle, 502 U.S. at 67-68). As Petitioner does not contend that the gang expert's testimony rose to the level of violating due process, the Court will not consider this argument.

*Sufficiency of the Evidence*

"A petitioner for a federal writ of habeas corpus faces a heavy burden when challenging the sufficiency of the evidence used to obtain a state conviction on federal due process grounds." Juan H. v. Allen, 408 F.3d 1262, 1274 (9th Cir. 2005) (noting under AEDPA, a petition for habeas corpus may only be granted where the state court's application of Jackson v. Virgina, 443 U.S. 307 (1979) was objectively unreasonable). A petitioner is "entitled to habeas corpus relief if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." Jackson, 443 U.S. at 324. Pursuant to the Supreme Court's holding in Jackson, the test to determine whether a factual finding is fairly supported by the record is as follows, "whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson, 443 U.S. at 319; see also McDaniel v. Brown, __ U.S. __, 130 S.Ct. 665 (2010) (reaffirming the standard set forth in Jackson). "An additional layer of deference is added to this standard by 28 U.S.C. § 2254(d), which obliges [Petitioner] to demonstrate that the state court's adjudication entailed an unreasonable application of the quoted Jackson standard." Briceno, 555 F.3d at 1078 (citing Juan H., 408 F.3d at 1274).

Sufficiency of evidence claims are judged by "the substantive elements of the criminal offense as defined by state law." Jackson, 443 U.S. at 324 n.16. Furthermore, this Court must presume the correctness of the state court's factual findings. 28 U.S.C. § 2254(e)(1); Kuhlmann v. Wilson, 477 U.S. 436, 459 (1986). This presumption of correctness applies to a state appellate court's determinations of fact as well as those of a state trial court. Tinsley v. Borg, 895 F.2d 520,

525 (9th Cir. 1990).

> To warrant a gang enhancement, California law requires the prosecutor to prove two things. First, the Prosecutor must demonstrate that the defendant committed a felony "for the benefit of, at the direction of, or in association with a criminal street gang." (citation omitted)  Second, the prosecutor must show that the defendant committed the crime "with the specific intent to promote, further, or assist in any criminal conduct by gang members." (citation omitted)

Briceno, 555 F.3d at 1078 (citing Cal.Penal Code § 186.22(b)(1)).

The Ninth Circuit has "previously recognized the importance of keeping these two requirements separate, and ha[s] emphasized that the second step is not satisfied by evidence of mere membership in a criminal street gang alone." Briceno, 555 F.3d at 1078. Bricerno goes to great lengths to distinguish the difference between the "benefit of, at the direction of, or in association with" element and the "specific intent" element. The court found that, while most gang expert testimony is acceptable to prove the first element, it is not acceptable to prove specific intent absent some direct or circumstantial evidence of the petitioner's actual intent. See id. at 1079.

In Briceno, the Ninth Circuit held that the gang enhancement to Briceno's robbery charge was not supported by sufficient evidence in that the gang expert's testimony alone was not enough to sustain a finding of specific intent. The gang expert in Briceno testified "almost exclusively in hypothetical; he did not provide any direct or circumstantial evidence of Briceno['s].... own intent." Id. at 1078-79. Furthermore, the gang expert could not provide an opinion when asked whether Briceno committed the robberies "with the intent to promote, further, and assist criminal conduct by members of the Hard Times gang." Id. at 1079. The gang expert merely "responded in generalities, stating that such crimes 'glorified' the gang and increased the status of the offenders." Id.  The court found that such testimony may help establish "that the crime ultimately benefitted the gang in some way," but that it lends nothing to proving the specific intent for committing the crimes. Furthermore, there was no independent evidentiary link between the commission of the crimes and whether he had the "specific intent to facilitate other gang crimes." Id. (quoting Garcia v. Carey, 395 F.3d 1099, 1104 (9th Cir. 2005) (holding that a known gang member's commission of a robbery "in an area known to be in the heart of the gang's 'turf'" does not evidence the gang member's "specific intent to facilitate other criminal conduct by the gang")). Such evidentiary triggers could include a

gang member committing a crime to protect his "turf," see People v. Romero, 140 Cal. App.4th 15 (Cal. Ct. App. 2006), or brandishing gang signs or a gang moniker during the commission of the crime, see People v. Hill, 142 Cal. App. 4th 770 (Cal. Ct. App. 2006).  Briceno, 555 F.3d at 1081.

Much like Briceno, the gang expert at Petitioner's trial testified mostly in hypotheticals and offered generalities about how running from law enforcement would further the gang because it showed that Petitioner was "defiant towards law enforcement." (Lodged Doc. 4, 3.)  The gang expert testified further that any crime committed by a gang member benefits the street gang because the gang member is "showing the fellow members of the gang that he's not afraid of the cops." Id. In holding that the gang enhancement attached to Count Two was supported by sufficient evidence, the appellate court found specific intent in that Petitioner "intended to evade the deputies, that he intended to commit this crime in association with Rudy, and that he knew Rudy was a member of his gang." Id. at 6.  The court further relied on the fact that both Petitioner and Rudy were wearing gang colors as they fled the deputies and that both had committed the carjacking the night before.  Id. at 7. The mere fact that both were members of the gang or that they were wearing gang colors is not sufficient evidence that Petitioner had the specific intent to further the gang by running from the deputies.  The gang expert did not give any testimony as to Petitioner's specific intent in committing this crime nor was the appellate court able to point to an evidentiary link between Petitioner's intent to further gang activity and his evasion of the deputies.  While Petitioner and Rudy did claim BCP during the September 6, 2004, carjacking, these actions are too far attenuated from Petitioner's evasion of law enforcement on September 7, 2004, to be considered the same gang furthering activity.  Because there is no evidence to support the conclusion that Petitioner chose to run from the deputies in order to further gang activity, Petitioner's constitutional right to due process was violated as a reasonable finder of fact could not find the gang enhancement true beyond a reasonable doubt.

In defending its holding that Petitioner ran from the deputies in furtherance of his gang, the appellate court relied heavily on People v. Morales, 112 Cal. App.4th 1176 (Cal. Ct. App. 2003).  In Moralex, the court found specific intent when (1) Morales intended to commit the crime with the two other individuals; and (2) knew that those two other individuals were members of his gang. Morales, 5 Cal. Rptr. 3d at 1197-98.  The expert in Morales did not testify to the specific intent of

the defendant, instead he testified that any such crime, like the crime committed by the defendant, would satisfy the "benefit of, direction of, or in association with" element leading the court to hold that "if any such crime satisfies this element, then so did defendant's crimes." Id.  The Ninth Circuit, however, found that, "given our analysis of [People v. Gardeley, 14 Cal. 4th 605 (1997)], we doubt that Morales is an accurate statement of California law." Briceno, 555 F.3d at 1081 n.4.  Gardeley, set forth detailed requirements with regard to specific intent "to ensure that the statute increased punishment only when a defendant 'committed a felony to aid or abet criminal conduct *of a group* that has as a primary function the commission of specified criminal acts and whose members have actually committed specified crimes, and who acted with the specific intent to do so.'" Briceno 555 F.3d at 1080 (emphasis in original) (quoting Gardeley 14 Cal. 4th at 623-24).  In light of Gardeley and Briceno, the Court finds the appellate court's reliance on Morales unpersuasive.

Accordingly, Petitioner is entitled to relief as to the gang enhancement attached to Count Two because the California Court of Appeal's conclusion on this issue was an objectively unreasonable application of federal law.

Ground Two

Petitioner claims that his counsel was ineffective in failing to object to the gang expert's testimony, thereby violating his Sixth Amendment right to counsel.

An allegation of ineffective assistance of counsel requires that a petitioner establish two elements: (1) counsel' s performance was deficient and (2) petitioner was prejudiced by the deficiency. Strickland v. Washington, 466 U.S. 668, 687(1984); Lowry v. Lewis, 21 F.3d 344, 346 (9th Cir. 1994). Under the first element, the petitioner must establish that counsel's representation fell below an objective standard of reasonableness, specifically identifying alleged acts or omissions which did not fall within reasonable professional judgment considering the circumstances. Strickland, 466 U.S. at 688; United States v. Quintero-Barraza, 78 F.3d 1344, 1348 (9th Cir. 1995). Judicial scrutiny of counsel's performance is highly deferential and there exists a "strong presumption that counsel's conduct [falls] within a wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" Strickland, 466 U.S. at 687 (quoting Michel v. Louisiana, 350 U.S. 91, 101 (1955)) ; Sanders

v. Ratelle, 21 F.3d 1446, 1456 (9th Cir. 1994).

Second, the petitioner must show that counsel's errors were so egregious that the petitioner was deprived of the right to a fair trial, namely a trial whose result is reliable. Strickland, 466 U.S. at 687. To prevail on the second element, the petitioner bears the burden of establishing that there exists "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Quintero-Barraza, 78 F.3d at 1348 (quoting Strickland, 466 U.S. at 694). A court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the petitioner as a result of the alleged deficiencies. Strickland, 466 U.S. at 697. Since prejudice is a prerequisite to a successful claim of ineffective assistance of counsel, any deficiency that was not sufficiently prejudicial to the petitioner's case is fatal to an ineffective assistance of counsel claim. Id.

Petitioner claims that his counsel's performance was constitutionally ineffective during the gang expert's testimony for the following reasons: (1) counsel did not object to insufficient foundation; (2) counsel did not object that the expert's testimony was based solely on speculation and was thereby inadmissable; (3) counsel should have moved to strike the gang expert's opinion testimony; (4) counsel should have moved that the court admonish the jury to disregard the gang expert's opinion; and (5) counsel should have moved to dismiss the gang allegation as to court two due to insufficient evidence. (Pet., 26.)

The main thrust of Petitioner's argument is that the gang expert only testified to his own opinion and the evidence was speculative and therefore inadmissible. In this case, Petitioner has not demonstrated that an objection to the gang expert testimony would have had merit. See Dubria v. Smith, 224 F.3d 995, 1003-04 (9th Cir. 2000). "California Evidence Code § 801(a) provides that an expert witness may give opinion testimony if the opinion is 'related to a subject that is sufficiently beyond common experience that the opinion of an expert would assist the trier of fact.'" Briceno, 555 F.3d at 1077. "Failure to take a futile or meritless action does not constitute deficient performance." Vasquez v. Horel, No. CV 07-2744-AHS (SH), 2009 WL 1709042 at *17 (9th Cir. June 12, 2009) (citing James v. Borg, 24 F.3d 20, 26-27 (9th Cir. 1994) for the finding of no ineffective assistance of counsel when counsel failed to assert meritless suppression motion and failed to object to non-prejudicial jury

instruction). In light of California law, objection to the expert's opinion testimony may well have seemed utterly futile to trial counsel.

After an examination of the record, the Court finds it not unreasonable that the appellate court found that trial counsel's representation did not fall below an objective standard of reasonableness for professional assistance. The appellate court found that:

> even if we were to assume the objections would not have been fruitless, counsel's failure to object can be seen as matter of sound strategy. It is entirely plausible that counsel tactically questioned the expert to purposefully weaken all of the expert's testimony. Counsel's cross-examination showed the expert's broad view of what acts show a specific intent to further, promote, or assist in gang members' criminal conduct. Indeed, counsel's cross-examination pointed to arguable inconsistencies and vagueness in the expert's testimony.

(Lodged Doc. 4, 8-9.) In light of California law allowing for experts to give opinion testimony and given the discretion an attorney has to conduct each case according to the strategy he or she deems most fit, the Court does not find that the appellate court made an unreasonable application of clearly established supreme court precedent with regards to the ineffective assistance of counsel claim. Accordingly, Petitioner is not entitled to relief as to Ground Two.

Ground Three

Petitioner claims that his indeterminate sentence of fifteen years to life is cruel and unusual punishment in violation of the Eighth Amendment.

A criminal sentence that is not proportionate to the crime for which a defendant is convicted may violate the Eighth Amendment. In <u>Lockyer v. Andrade</u>, 123 S. Ct.1166 (2003), the Supreme Court discussed the current state of Eighth Amendment proportionality review and held that the only clearly established governing legal principle is that a "gross disproportionality" review applies to criminal sentences for a term of years. <u>Id</u>. at 1173. Citing extensively to its past cases dealing with criminal sentencing and proportionality under the Eighth Amendment, the Court acknowledged that it has "not established a clear and consistent path for courts to follow." <u>Id</u>. The Supreme Court held that "the only relevant clearly established law amenable to the 'contrary to' or 'unreasonable application of' framework is the gross disproportionality principle, the precise contours of which are unclear, applicable only

in the 'exceedingly rare' and 'extreme' case." Id.[2]

In Ewing v. California, 123 S. Ct.1179 (2003), the Supreme Court again reviewed its Eighth Amendment jurisprudence, choosing to adopt Justice Kennedy's view [3] that:

> [There are] four principles of proportionality review-- the primacy of the legislature; the variety of legitimate penological schemes; the nature of our federal system; and, the requirement that proportionality be guided by objective factors– that inform the final one: The Eighth Amendment does not require strict proportionality between the crime and the sentence. Rather, it forbids only extreme sentences that are 'grossly disproportionate' to the crime.

Ewing, at 1186-1187.

The appellate court conducted its review using only California law. However, its analysis remains sound under the federal standard set forth above. In examining whether Petitioner's sentence was "grossly disproportionate to his crime," the appellate court

> briefly set forth [Petitioner's] criminal history. . . . The court found [Petitioner] in violation of his probation on two separate occasions. In addition, he committed the carjacking while on felony probation and summary probation in five separate misdemeanor cases. . . . Beyond driving under the influence, this is [Petitioner's] third conviction for crimes likely to cause great bodily injury.

(Lodged Doc. 4, 10.) The appellate court found that the series of crimes leading up to the instant conviction "demonstrate a dangerous pattern" and that Petitioner's sentence here reflects his "repeated engagement in dangerous criminal behavior." Id. In light of Petitioner's past criminal behavior and the dangerousness of the crime he committed, namely carjacking which is "accomplished by means of force or fear," the Court finds that the appellate court's analysis did not constitute an unreasonable application of federal law. Accordingly, Petitioner is not entitled to relief as to Ground Three.

## CONCLUSION

For the foregoing reasons, Petitioner's petition for writ of habeas corpus is hereby GRANTED as to Ground One and DENIED as to Grounds Two and Three.

## CERTIFICATE OF APPEALABILITY

---

[2] The Court recognizes that other Supreme Court cases have dealt with cruel and unusual punishment. See Solem v. Helm, 463 U.S. 277 (1983); Rummel v. Estelle, 445 U.S. 263, 276 (1980). However, Rummel and Solem analyze cruel and unusual punishment in the context of recidivist statutes. In this case, Petitioner was sentenced solely on his current conviction.

[3] As expressed in his concurring opinion in Harmelin v. Michigan, 501 U.S. 957, 1001 (1991), citing Solem v. Helm, 463 U.S. 277, 288 (1983).

A state prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition, and an appeal is only allowed in certain circumstances. Miller-El v. Cockrell, 537 U.S. 322, 336-37 (2003). The controlling statute in determining whether to issue a certificate of appealability is 28 U.S.C. § 2253, which provides as follows:

>   (a) In a habeas corpus proceeding or a proceeding under section 2255 before a district judge, the final order shall be subject to review, on appeal, by the court of appeals for the circuit in which the proceeding is held.
>
>   (b) There shall be no right of appeal from a final order in a proceeding to test the validity of a warrant to remove to another district or place for commitment or trial a person charged with a criminal offense against the United States, or to test the validity of such person's detention pending removal proceedings.
>
>   (c)     (1) Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from–
>
>           (A) the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court; or
>
>           (B) the final order in a proceeding under section 2255.
>
>       (2) A certificate of appealability may issue under paragraph (1) only if the applicant has made a substantial showing of the denial of a constitutional right.
>
>       (3) The certificate of appealability under paragraph (1) shall indicate which specific issue or issues satisfy the showing required by paragraph (2).

If a court denies a petitioner's petition, the court may only issue a certificate of appealability "if jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Miller-El, 322 U.S. at 338 (citing Slack v. McDaniel, 529 U.S. 473, 484 (2000)). While the petitioner is not required to prove the merits of his case, he must demonstrate "something more than the absence of frivolity or the existence of mere good faith on his . . . part." Id.

In the present case, the Court finds that Petitioner has not made the required showing for Grounds Two and Three, however the Court will issue the certificate for Respondent as to Ground One.

**ORDER**

Accordingly, IT IS HEREBY ORDERED that:

1) the petition for a writ of habeas corpus is GRANTED in part and DENIED in part;

2) the Clerk of Court is DIRECTED to enter judgment;

3) the case is remanded to the Tulare County Superior Court for re-sentencing without the gang enhancement as to Count Two, to take place within sixty (60) days of the date of this order; and

4) certificate of appealability is GRANTED as to Ground One of the petition only.

IT IS SO ORDERED.

**Dated: May 26, 2010** **/s/ John M. Dixon**
UNITED STATES MAGISTRATE JUDGE